CHARLES H. WERNER, Plaintiff, *v.* THOMAS L. MANSON, JOHN A. BLACK, TIMOTHY F. ALLEN, HENRY S. FULLERTON, JAMES P. COOKE and HENRY W. EVANS, Composing the Firm of T. L. MANSON & Co., Defendants.

(Supreme Court, New York Trial Term, April, 1919.)

Stock brokers — margin accounts — selling out under the "rule" — when not liable to customer of correspondent.

Plaintiff carried an account on margin with a firm of stock brokers, which firm cleared through defendants, another firm of stock brokers, who also bought and sold stock on margin for plaintiff's brokers, carrying the account in their name and not knowing their customers in the transactions. On April 12, 1917, plaintiff directed his brokers to buy 100 shares of stock; they gave the order to defendants who executed it and advised plaintiff's brokers that the stock had been purchased for their account. On April 13, 1917, plaintiff's brokers wrote defendants, enclosing check for $1,000 and asking them to credit same to the account of plaintiff against the purchase of the said stock. Defendants immediately notified plaintiff's brokers that they alone were recognized in the transaction and that the check was placed to their credit, to which action plaintiff's brokers acquiesced. The check was deposited by defendants but was returned unpaid, plaintiff's brokers having made an assignment for the benefit of creditors on the afternoon of April 13, 1917, the same day upon which plaintiff had given them his check for $800 as margin against the purchase of said stock, which check they deposited to their account. On April 14, 1917, defendants sold the said stock on the New York Stock Exchange under the "rule" and so advised plaintiff's brokers. Plaintiff was not notified of the time and place of sale and subsequent to the sale called on defendants to account to him for the 100 shares of stock which he claimed were purchased for his account, which defendants refused to do, claiming they were accountable for the profit in the transaction to the assignees of plaintiff's brokers. Thereafter plaintiff recovered the $800 which he had paid his brokers as margin from their trustee in bankruptcy. This action

is brought by plaintiff against defendants for an alleged breach of contract in the sale of the 100 shares of stock without notice to him. *Held*, that defendants were never liable to plaintiff; that even if they had been plaintiff having rescinded his contract with his brokers and recovered his deposit of $800 the whole transaction was ended both as to his brokers and as to the defendants.

ACTION to recover damages for sale of stock by brokers without notice.

Werner, Congdon & McGivney (John T. Condon, of counsel), for plaintiff.

Anderson, Iselin & Anderson (Ellery O. Anderson, of counsel), for defendants.

DAVIS, J. This action is brought to recover damages for the alleged unlawful sale by defendants of certain stock in their possession claimed to have been owned by the plaintiff. The complaint alleges that on or about April 12, 1917, the defendants as stockbrokers, under the firm name of T. L. Manson & Co., acting for the plaintiff, purchased for him in the open market 100 shares of the common capital stock of the United States Steel Corporation at $111\frac{7}{8}$ per share, and that thereafter and on the 14th day of April, 1917, without the knowledge or consent of plaintiff and without his instructions so to do and without giving notice to plaintiff, the defendants sold the 100 shares of stock so purchased for and owned by plaintiff; that shortly after the sale of the stock by defendants the market price thereof advanced and the plaintiff could have sold his shares of stock at a much higher price than the prevailing price at the time of the sale of the stock had not defendants wrongfully sold the same, by reason of which plaintiff has suffered damage in the sum of $3,000; that prior to the commencement of this

action plaintiff duly demanded of the defendants that they deliver the 100 shares of stock and offered to pay to defendants such balance of the purchase price thereof as they might be entitled to, which demand was refused.

The answer denies the various allegations of the complaint except such as allege the copartnership of defendants and their engagement in the general stock brokerage business, and sets up three separate defenses: (1) That the plaintiff, with full knowledge of the facts, rescinded and disaffirmed the alleged contract for the purchase of the stock; (2) that the plaintiff, with full knowledge of the facts, ratified and confirmed the sale; (3) that the stock was duly sold according to the terms of the contract of purchase.

The facts are practically undisputed. The plaintiff is an attorney and counselor at law and has been such for over twenty-five years, engaged in the practice of his profession in the city of New York as a member of the firm of Werner, Congdon & McGivney. For more than a year prior to April 14, 1917, plaintiff had a margin account with the stock brokerage firm of Morris & Pope and paid on account of purchases and sales made for his account the regular and customary commission for parties not members of the New York Stock Exchange of one-eighth of 1 per cent, namely, $12.50 for each 100 shares of stock purchased or sold by Morris & Pope for plaintiff's account. From time to time as purchases and sales were made by Morris & Pope for plaintiff they sent to him notices thereof containing the following provision: "It is agreed between broker and customer that all transactions are subject to the rules and customs of the New York Stock Exchange and its clearing house, or of the exchange where order was executed; that all securities from time to time carried in the customer's marginal

account, or deposited to protect the same, may be loaned by the broker, or may be pledged by him either separately or together with other securities either for the sum due thereon or for a greater sum, all without further notice to the customer; that on all marginal business the right is reserved to close transactions when margins are running out, without further notice, and to settle contracts in accordance with the rules and customs of exchange where order was executed.'' Defendants are copartners engaged in a general stock brokerage business under the firm name of Thomas L. Manson & Co. and members of the New York Stock Exchange. For over a year prior to April 14, 1917, Morris & Pope had an account with defendants, and defendants bought and sold stock and other securities for Morris & Pope upon margin. Defendants also bought and sold securities upon the agreement that the firm of Morris & Pope should pay in full for various securities purchased for them upon delivery by defendants, or should make actual delivery of various securities sold for them by defendants, which latter transactions are customarily known and referred to on the New York Stock Exchange as a '' clearance.'' On purchases and sales made on margin and on purchases and sales made and cleared the defendants charged the usual commission of $3.13 for each 100 shares of stock so purchased or sold or cleared, which is the usual commission charged, made to and paid by members of the New York Stock Exchange on such business conducted for them by other members of the New York Stock Exchange, pursuant to the rules and custom of the New York Stock Exchange, and from time to time the firm of Morris & Pope, pursuant to said rules and customs, paid to defendants the amount due for commissions charged at such rates on business conducted

Supreme Court, April, 1919.          [Vol. 107.

for them by defendants. The firm of Morris & Pope purchased and sold stocks through defendants both for their own account and for their customers, but all such purchases and sales were made by Morris & Pope in their own name and for their own account, and when securities were purchased for customers the defendants were not advised and did not know at the time of such purchases of the fact that said transactions were for customers of Morris & Pope. Said purchases and sales of stocks were made by the defendants for Morris & Pope under an agreement that on stocks purchased on margin the usual and customary margin of approximately ten per cent be deposited by Morris & Pope with defendants as partial security for the amount due, and that such transactions should be subject to the rules and customs of the New York Stock Exchange and its clearing house or of the exchange where such order was executed, and that on all marginal business the right was reserved by defendants to close transactions when margins were running out, without further notice, and to settle contracts in accordance with the rules and customs of the exchange where the order was executed. The following is a rule of the constitution of the New York Stock Exchange, and it is a custom for Stock Exchange houses to comply strictly with said rule: "Article XXVIII. Closing contracts ' under the rule.' Sec. 1. When the insolvency of a member or firm is announced on the Exchange, members having contracts subject to the rules of the Exchange with the member or firm shall without unnecessary delay proceed to close the same. If the contracts involve securities admitted to quotation upon the Exchange the closing must be in the Exchange, either officially of the Secretary, or by personal purchase or sale. If the contracts involve securities not dealt in on the Exchange, the purchase

or sale of such securities must be promptly made in the best available market. Should a contract not be closed, as above provided, the price of settlement shall be fixed by the price current at the time when such contract should have been closed under this rule.''

On the 12th day of April, 1917, the plaintiff directed the firm of Morris & Pope to buy for him 100 shares of the common capital stock of the United States Steel Corporation, and thereupon Morris & Pope ordered the defendants to buy 100 shares of the said stock at the prevailing market price for the account of Morris & Pope. On the 12th day of April, 1917, pursuant to said order of Morris & Pope, the defendants purchased at the prevailing market price and under the terms of the agreement existing between them and the firm of Morris & Pope 100 shares of the common capital stock of the United States Steel Corporation, the price paid therefor being 111⅞ per share, and notified Morris & Pope of the purchase of the stock for its account. Defendant did not send the certificates for said 100 shares of stock to Morris & Pope, but retained such certificates pursuant to its agreement as collateral security and charged the account of Morris & Pope with the purchase price thereof, together with a commission of $3.13 for the one hundred shares. On the 13th day of April, 1917, the firm of Morris & Pope wrote a letter to the defendant, of which the following is a copy: '' Morris & Pope, members of New York Stock Exchange. Investment Securities. 50 Broad street, New York City; cable address, ' Hathpope '; telephone, 6985 Broad. April 13, 1917. Messrs. T. L. Manson & Co., 100 Broadway, New York City: Dear Sirs — Enclosed find check for one thousand dollars ($1,000). Kindly place same to the credit of Mr. Charles H. Werner, c/o Morris & Pope, against the' purchase on April 12th of 100 shares of U. S. Steel

common. Very truly yours, (Signed) Morris & Pope."
This letter was received by the defendants on April
13, 1917. Thereupon Timothy F. Allen, a member of
the firm of Thomas L. Manson & Company, and one of
the defendants herein, immediately communicated on
the telephone with the firm of Morris & Pope, and
said: " We don't know anything about any other
name or person than yours in connection with the
purchase on April 12th of 100 shares of U. S. Steel
common. We bought the stock for you." The repre-
sentative of Morris & Pope then said: "All right;
disregard our instructions and leave the stock as it is
in our account." Thereupon, on the 13th day of April,
1917, the defendants wrote a letter to the firm of
Morris & Pope, of which the following is a copy:
" April 13th, 1917. Messrs. Morris & Pope,
50 Broad street, New York City: Dear Sirs —
We acknowledge receipt of your favor of even
date enclosing check for $1,000. As per our tele-
phone conversation we have disregarded the instruc-
tions contained in your letter and have placed the same
to your credit. Yours very truly, (Signed) T. L.
Manson & Co." This letter was received by Morris
& Pope on the 13th day of April, 1917. The following
is a copy of the check enclosed in the letter written
April 13, 1917, by Morris & Pope to Thomas L. Man-
son & Co.: " Morris & Pope, 50 Broad street. No.
6342. New York, April 13, 1917. Pay to the order of
T. L. Manson & Co. $1,000 (one thousand dollars).
To the American Exchange National Bank. Morris &
Pope. (Signed) Morris & Pope, Atty." Said check
was deposited by Manson & Co. in its bank account
and subsequently was returned by the American
Exchange National Bank as no good, and upon the
banker's memo. slip attached to it were written the
words " Have assigned," and the check has never
been paid.

On April 13, 1917, Charles H. Werner delivered his check to the order of Morris & Pope in the sum of $800 as margin for the purchase of 100 shares of the common capital stock of the United States Steel Corporation, and said check was deposited by Morris & Pope in its regular bank account in the American Exchange National Bank. On the afternoon of April 13, 1917, Lewis G. Morris, James H. Pope and Frank B. Porter, individually and as copartners, and doing business under the firm name and style of Morris & Pope, duly executed and delivered a general assignment for the benefit of creditors to John D. Peabody, Esq., as assignee, which instrument of assignment was duly recorded in the county clerk's office in the county of New York on the 14th day of April, 1917, on which date the assignee took possession of the property and assets of the said firm. Thereafter, and on or about the 30th day of April, 1917, pursuant to an involuntary petition in bankruptcy, duly filed in the office of the clerk of the District Court of the United States for the Southern District of New York, by three creditors, the said Lewis G. Morris, James H. Pope and Frank B. Porter, individually and as copartners, and doing business under the firm name and style of Morris & Pope, were duly adjudicated bankrupts, and pursuant to the order of his appointment the trustee received and took possession and control of all the property and assets of said bankrupts, including the sum of $6,934.57, being the balance of moneys to the credit of the firm of Morris & Pope in the American Exchange National Bank at the closing of the firm's account upon its insolvency on April 14, 1917, and which sum was paid over as above mentioned to John D. Peabody, Esq., as assignee, and by him in turn over to William H. Bonynge, as trustee in bankruptcy. On April 14, 1917, the insolvency of said firm of Morris

& Pope was announced on the New York Stock
Exchange, and upon such announcement said Timothy
F. Allen immediately communicated with the secre-
tary of the New York Stock Exchange and informed
him that his firm was carrying 100 shares of the com-
mon capital stock of the United States Steel Corpora-
tion for the account of said firm of Morris & Pope.
Thereupon defendants were directed by the secretary
of the New York Stock Exchange to immediately sell
the same on the New York Stock Exchange at the pre-
vailing market price and close out said contract exist-
ing between the defendants and the said firm of Morris
& Pope. The defendants on April 14, 1917, sold the
said 100 shares of common capital stock of the United
States Steel Corporation at the price of 113¼ per
share on the New York Stock Exchange, and realized
therefor a gross amount of $11,325, which, after
deducting the regular commission of $3.13 and the
stamp tax of $2, realized the net amount of $11,319.87.
The sale was made pursuant to instructions of the
secretary of the New York Stock Exchange and in
accordance with the custom and rule of the New York
Stock Exchange hereinbefore referred to, namely,
article XXVIII, section 1, of the constitution of the
New York Stock Exchange. On the 12th day of April,
1917, prior to the purchase of the 100 shares of stock
referred to, the firm of Morris & Pope were indebted
to the defendant firm, Thomas L. Manson & Company,
in the sum of $37.50 for commission due for various
clearance transactions and charges incurred by said
firm of Morris & Pope in its account with defendants.
Subsequent to the purchase and prior to the sale of
said 100 shares of United States Steel common by the
defendants the firm of Morris & Pope were on April
14, 1917, indebted to the defendants in the sum of
$11,236.84 by reason of the purchase of said stock,

and balance due commissions on clearances hereinbe-
fore referred to. The following is a statement of the
account between said Thomas L. Manson & Company
and Morris & Pope, showing the purchase and sale of
said 100 shares of common capital stock of the United
States Steel Corporation and the credit balance on the
closing of said account on April 14, 1917, after deduct-
ing therefrom the debit balance due to the defendants
by said firm of Morris & Pope, and the agreed commis-
sion charged and stock taxes: "Dr. Morris & Pope.
In account with Thomas L. Manson & Co. Cr. Date,
1917. Apr. 13 — To 100 Steel 111⅞, 11187.50; Apr.
14 — Bal. due on Commission Bill, March, 37.50; ditto
April, 6.25; Apr. 16 — Tax on 100 Steel sold, 2; Cash
Bank of N.Y. a/c ck. returned, 1000; Int. 6% to date,
5.59; Balance, 86.16 — 12325. Date, 1917. Apr. 13 —
By Cash Ck. 1000; Apr. 16 — 100 Steel 113¼, 11325 —
12325. April 16 — By Balance, 86.16." After making
said sale the defendants wrote a letter to the firm of
Morris & Pope, inclosing a notice of sale, of which the
following are copies: "April 14, 1917. Messrs. Mor-
ris & Pope, 50 Broad Street, New York City: Gentle-
men — Under Article 28, Section 1, of the Constitu-
tion of the New York Stock Exchange, we have sold
for your account to-day one hundred shares U. S.
Steel common at 113¼, as per notice inclosed. Regret-
ting your misfortune, we remain, Yours very truly,
(Signed) T. L. Manson & Co." "Office of Thomas L.
Manson & Co., 100 Broadway, New York, 4/14/17.
Messrs. Morris & Pope: Dear Sirs — We have this
day sold for your account and risk: Shares, 100;
Stock, Steel; Price, 113¼; Time, 10:27; a/c Guthrie,
E. A. Manice. It is agreed between broker and cus-
tomer: That all transactions are subject to the rules
and customs of the New York Stock Exchange and its
Clearing House, or of the Exchange where order was

executed. That all securities from time to time carried in the customer's marginal account, or deposited to protect the same, may be loaned by the broker, or may be pledged by him, either separately or together with other securities, either for the sum due thereon or for a greater sum, all without further notice to the customer. That on all marginal business the right is reserved to close transactions when margins are running out, without further notice, and to settle contracts in accordance with rules and customs of exchange where order was executed. Yours respectfully, Thomas L. Manson & Co. Telephone Rector 2500.'' Defendants did not give notice of the time or place of the sale of said stock to plaintiff, and the plaintiff had no personal knowledge of the sale of said stock or of the intention of the defendants to sell the same. The defendants did not have in their possession any securities of any character belonging to Morris & Pope and held by them as collateral security for any amount due to them by said Morris & Pope except the said 100 shares of common capital stock of the United States Steel Corporation. At the time of the purchase by the defendants of the said 100 shares of common capital stock of the United States Steel Corporation, and at all the times thereafter until the sale of said stock, the plaintiff had a credit balance with Morris & Pope in excess of the market value of said 100 shares of stock, and there is now due to plaintiff from the firm of Morris & Pope a balance upon his account in excess of the market value of said 100 shares, with accrued interest. Subsequent to the sale of said stock John D. Peabody, as assignee of said insolvent firm of Morris & Pope, wrote a letter to the defendants, of which the following is a copy, and said letter was received by the defendants on the 14th day of April, 1917: '' Montgomery & Peabody, Counsellors at Law,

2 Wall Street, New York. April 14, 1917. John S. Montgomery. John D. Peabody. Messrs. T. L. Manson & Co., 100 Broadway, New York: Gentlemen — I hereby notify you that Lewis G. Morris, Frank B. Porter and James H. Pope, doing business under the name of Morris & Pope, having an account in your bank, made a general assignment for the benefit of their creditors dated the 14th day of April, 1917, and filed and recorded this day, to me, and that funds of that firm or of any one of the partners on deposit with you are to be paid out upon my order only. Yours truly, (Signed) John D. Peabody, as assignee of Lewis G. Morris, Frank B. Porter and James H. Pope, doing business under the firm name of Morris & Pope, for the benefit of creditors. By John L. Montgomery, Atty.''

On April 14, 1917, and subsequent to the sale by Thomas L. Manson & Company of said 100 shares of the common capital stock of the United States Steel Corporation, and subsequent to the receipt of said letter from John D. Peabody, assignee, the plaintiff, Charles H. Werner, had an interview with the defendants Timothy D. Allen and Henry S. Fullerton, at the office of Thomas L. Manson & Company, and stated to them that said 100 shares of stock had been purchased for his account, and that he was entitled to the profit realized on the sale of said stock by Thomas L. Manson & Company, and demanded payment to him of the profit realized on the said transaction. Mr. Allen told him that they could not in any way recognize his claim, because the firm of Thomas L. Manson & Company had purchased the stock on the order and for the account of Morris & Pope, with whom they had an account of long standing, and further informed the plaintiff that he would have to take the matter up with the assignee

of the firm of Morris & Pope, as the assignee had already notified the firm of Thomas L. Manson & Company that any funds on deposit with it for the firm of Morris & Pope were to be paid out only upon an order of said assignee. Thereafter, on the 16th day of April, 1917, plaintiff wrote a letter to the defendants, of which the following is a copy, and said letter was received by the defendants on the 16th day of April, 1917: " 61 Broadway, New York, April 16, 1917. Messrs. Thomas L. Manson & Co., 100 Broadway, New York City: Dear Sirs — I beg to inform you that the 100 shares of the United States Steel common, which upon the order of Morris & Pope you purchased last week at 111⅞, was purchased for my account, and I hereby demand payment over to me of the profit realized on the said transaction. Mr. J. Hathaway Pope, of Morris & Pope, has informed me that the 100 shares covered by the above transaction were bought on my account. Yours respectfully, (Signed) Charles H. Werner. W./M." During the week commencing on Monday, April 16, 1917, the plaintiff Charles H. Werner, together with his partner, Glenn M. Congdon, had a further interview with the defendant Timothy F. Allen at the office of Thomas L. Manson & Co. The plaintiff Charles H. Werner stated that he was entitled to the profit realized on the sale of said stock, and again demanded payment to him of said profit. Mr. Allen told the plaintiff that his firm could not pay over this profit because the assignee of the firm of Morris & Pope claimed that it should be paid to him as assignee, and requested Mr. Congdon and Mr. Werner to take up the matter with Ellery O. Anderson, Esq., of the firm of Anderson, Iselin & Anderson, the attorneys for the firm of Thomas L. Manson & Company. Thereupon, during the week commencing April 23, 1917, the plaintiff, Charles H.

Werner, and said Glenn M. Congdon called upon Mr. Anderson and renewed their demand for payment of said profit, which was refused, and Mr. Anderson stated that in view of the demand of the assignee of the firm of Morris & Pope, he could not advise Thomas L. Manson & Co. to pay over any part of the proceeds of the sale of said United States Steel stock. Thereafter, on the 11th day of June, 1917, Charles H. Werner duly made and verified a petition to the District Court of the United States for the Southern District of New York in the bankruptcy proceedings of said Lewis G. Morris, Frank B. Porter and James H. Pope, individually and as copartners doing business as Morris & Pope, wherein the plaintiff Charles H. Werner *alleged,* among other things, that the firm of Morris & Pope and the individual members of the said firm, knowing of said firm's insolvency, " wrongfully, fraudulently and with intent to defraud the petitioner, Charles H. Werner, induced him to deliver to them his check for $800 for payment as margin on the purchase for plaintiff of 100 shares of the common capital stock of the United States Steel Corporation, and prayed that William H. Bonynge, as trustee therein, be directed to pay over to said Charles H. Werner the sum of $800. This petition also alleged that on the 12th day of April, 1917, your petitioner ordered the said firm of Morris & Pope to purchase for him 100 shares of the common capital stock of United States Steel Corporation, and upon being advised by a member of said firm that such stock had been purchased at 111⅞, your petitioner, on the morning of April 13, 1917, delivered his check to the order of Morris & Pope for the payment of the sum of eight hundred dollars ($800) as margin for the said purchase. Upon information and belief, your petitioner alleges that the firm of Morris & Pope did not

purchase the stock for your petitioner, but requested the stock brokerage firm of T. L. Manson & Company, of the Borough of Manhattan, City of New York, to execute the said order for the account of your petitioner. The firm of Morris & Pope and the individual members of the firm, knowing of the firm's insolvency, wrongfully, fraudulently and with intent to defraud your petitioner, induced your petitioner to deliver to it his said check for eight hundred dollars ($800), caused it to be certified, and thereupon deposited it to the credit of the firm of Morris & Pope with the American Exchange National Bank of the City of New York on April 13th, 1917.'' Thereafter, on or about the 11th day of June, 1917, the firm of Werner, Congdon & McGivney gave notice to Henry M. Stevenson, attorney for the trustee in bankruptcy in said proceeding, that upon said petition a motion would be heard for an order for the relief prayed for in said petition, and the petition having come on to be heard before Mr. Justice Martin T. Manton, district judge, an order was duly made on June 25, 1917, in and by which it was ordered and adjudged that the prayer of said petition be granted and that William H. Bonynge, as trustee, pay over the sum of $800. On June 26, 1917, upon the affidavit of the plaintiff, a further order was made in and by which the said order of June 25, 1917, was amended, directing William H. Bonynge, the former trustee and custodian, to pay over said sum of $800 to said Charles H. Werner. On the 26th day of June, 1917, pursuant to said order, said William H. Bonynge, as former trustee and custodian in bankruptcy of Morris & Pope, paid to the plaintiff Charles H. Werner said sum of $800, and said moneys were received and accepted by said Charles H. Werner. The defendants have never delivered the said 100 shares to plaintiff, nor have they given plaintiff any

notice of the disposition made by defendants of the proceeds of said stock, nor have they ever accounted to plaintiff for the proceeds of said stock or any part thereof. The complaint in the action was verified June 15, 1917. It thus appears that the plaintiff has taken practically every position known to the law as to the transaction in question. *First,* he ratified the sale and claimed the profits thereof; *second,* he disaffirmed the contract made with his brokers, Morris & Pope, in the purchase of the stock and reclaimed in the bankruptcy proceedings the $800 he had deposited with them as margin on account of his contract; *third,* he then brought this action to recover damages for an alleged breach of contract in the sale of said stock without notice to him.

The evidence shows that the plaintiff suffered no damages by the sale of the stock, even if it be held to have been purchased for his account. He knew of the sale on April fourteenth and between April fourteenth and April twenty-fourth he could have repurchased the stock at a price lower than that for which it was sold. Under the circumstances of this case that intervening period was a reasonable time for the replacing of the stock. But the stock did not belong to the plaintiff. On the other hand, if the plaintiff did ratify the sale, then this action cannot be maintained. But there is no question in this case as to what was the final position the plaintiff assumed in reference to the matters in controversy. He disaffirmed and rescinded the contract for the purchase of the stock with his brokers, Morris & Pope, and recovered the $800 deposited as margin through his application in the bankruptcy court. In fact plaintiff's counsel in his brief states: "His contract (plaintiff's) with Morris & Pope he has disaffirmed, and by means of the reclamation proceeding he has

recovered the margin deposited with them and which they converted. He (plaintiff) now seeks to recover from these defendants, on their obligation implied by operation of law, the profits of the transaction of purchase. By so doing that contract (that is the contract of Morris & Pope with defendant) is affirmed by him. The two contracts are separate and distinct; one he disaffirms, the other he affirms." And again he reiterates: " To state it briefly, the plaintiff did disaffirm the contract existing between him and Morris & Pope and recovered his margin of $800 deposited with them. But the contract implied between him and the defendants he seeks to affirm and to recover thereon the profit of the transaction. In so doing he is seeking no more than he is legally entitled to, to wit, his profits, and the margin deposited as well." The trouble with such argument is that when plaintiff rescinded his contract with Morris & Pope and recovered back his $800 deposited with them as margin, there was nothing left of his contract with Morris & Pope. Their authority immediately ceased. Any transactions they had previously had with the defendants in reference to the stock in question did not accrue to plaintiff's benefit. It was the same as if plaintiff had never authorized Morris & Pope to purchase the stock. The contract between Morris & Pope and the defendants was not changed as between them, but their transaction had no relation to plaintiff's contract with Morris & Pope. Plaintiff having elected to rescind his contract with Morris & Pope ended the whole transaction as to them and defendants, even if the defendants were liable to plaintiff, which they never were. Judgment for defendants dismissing complaint on the merits, with costs.

Judgment for defendants, with costs.